Good morning, Your Honors, and may it please the Court, I'd like to reserve three minutes of my time for rebuttal. This case is a constitutional challenge to U.S. Customs and Border Protection's policy of prohibiting, without advance permission, all photography from any area that the agency unilaterally declares to be Port of Entry property. Plaintiffs are two U.S. citizens who have alleged that they attempted to engage in protected speech by taking photographs while standing outside, in traditional public forums, near two different Ports of Entry in Southern California. What have you alleged about whether they were on CPB property? Your Honor, that's the core factual question that remains undecided in this case. It is our position that the clients were not on property that's correctly conceived of as Port of Entry property. But the government has applied its challenged policies to them. So the government does believe that they were standing on Port of Entry property. So you think that you were on CBP property or that you were not on CBP property? And let me tell you that I think your answer may be nuanced about what kind of forum we should apply, but the question of who owns the property seems to me to be a good starting point. For sure. We just don't know at this juncture. And maybe it will help if I explain, for instance, where Mr. Askins was standing. May I ask a preliminary question? Yes, Your Honor. At the Port of Entry property, does the government own the property or is it a designated area that they control, but it's not federal public land? Again, I do not have a clear understanding around these facts. It's my understanding, based on representations of counsel in the briefs, that these buildings are leased from GSA by the agency. But the areas around the buildings, the outdoor areas that are at issue in this case, it's unclear whether they're owned by the government, the federal government, or local property. And to answer Judge Bybee's question, so Mr. Askins was standing across the road in Calexico in the United States. Right next to where he was standing, there was a public park, a state park, I believe. It's a friendship park. It's described as being a street, an intersection of a public street. What does that mean? It means people just walk around the street? Yes, Your Honor. There's a storefront, so there's a strip of pavement, there's a small curb, and there's another strip of pavement. Those are streets that cars can drive on. There's also a sidewalk that curves around a green area that's a park. And he was standing just off the sidewalk in the street. And the people who are driving on this road, are they having anything to do with the border or they're just driving? Not necessarily. The road in question runs east to west entirely on the United States side of the line. Is there anything that would indicate that you were standing on CBP property? No, Your Honor, and that's part of the problem here. As this Court's precedents have said over and over again, the expectation that one has a First Amendment right to engage in speech in traditional public forums in areas that are publicly accessible, for speech to be restricted in those areas, that expectation, the government has to take clear steps to make clear to people that they can no longer engage in that kind of activity. That's what Venetian Casino said. And here, there's nothing that would indicate to a person who has not had to cross any border or interact at all with the federal government in Calexico, for example, that he or she is on port property while trying to take a photograph. I recognize... Governments, well, several things. This was all done in a motion to dismiss. That is correct, Your Honor. Government is claiming a security interest, essentially. Yes, Your Honor, although the only interest that the district court assessed, and only in dismissing our original, not the amended complaint, was an interest in territorial sovereignty, which was not an interest that the government actually put forward in any of its briefs. But also you represent, I don't know exactly what the complaint says, that it isn't even clear this is federal territory in an ownership sense. Yes, Your Honor. What does the complaint say about that? The complaint says that the areas where our clients stood and in which they would like to continue to engage in their protected speech are considered by the defendants to be port property, such that the defendants have applied the challenged policies to our clients. But there's no allegation as to ownership as such. That's correct. We just don't know at this juncture. And ownership isn't dispositive in any event. All right. So where I was going with my other question is it's always unclear to me, although the Supreme Court seems to have done this in Moss, how when you have a motion to dismiss the government's interests, which are only asserted but not alleged or proven or anything, how do we deal with them? Yes, Your Honor. I think, and this goes to some of the 28J letters, there are cases where it may be proper to dismiss a complaint on a motion to dismiss for failure to state a claim because there are certain contexts in which the First Amendment right is either there's no such right or there are cases that are enough on point that there's no real question of the government carrying its burden. Here, however, that's not. The Supreme Court sort of did this in Moss, where they essentially assigned a motive or a reason to the government. Some of it was in the complaint, actually. At least that the government was claiming that interest. But it was a qualified immunity issue that they were deciding, and it wasn't the merits of the Constitution. That's exactly right, Your Honor, and that's not what's at issue here. This is not a damages action. And importantly, we can agree that there are interests in such concepts as border security and national security. I don't think anyone can stand before anybody and say that that's not true. The question really is the tailoring question, and this Court has said time and again, even in nonpublic forums, that's what the Jacobson case that came down this week establishes. Even on a summary judgment motion, even in a potentially nonpublic forum, the government bears the burden of putting forth evidence that the interest that is asserted is actually being furthered by the restriction on speech. And in this instance, there's no claim that he couldn't stand there and see what he saw. That's correct, Your Honor. And this is very important, and this is why I think the government citations to the right of access line of doctrine is inappropriate. This is not about the right to enter into restricted areas and take whatever photographs you want. And, in fact, one of the questions that you may be wondering is what would a reasonable time, place, manner restriction look like in this context? There is one in the record. At ER 104, paragraph 9 of the media policy, so one of the two pieces of the challenged policies, very clearly says that people can't stand over the shoulder of a CBP agent or officer and photograph screens or photograph interviews, and we acknowledge that. Yeah, but that's a very, very different policy. This is a policy when somebody has come in and said, we'd like to do a feature on immigration. Can we come in and? It's applied much more broadly than that, Judge Bybee. Because nobody's ever going to get close to a computer screen. Of course not, and nor should they. But the right of access cases sort of are misleading because they're really about these enclosed spaces where the government has a right to restrict access to information over which the government properly has complete control. And here, because based on the pleadings of the amended complaint, which is, of course, operative at this point, all reasonable inferences in our favor, everything that we're talking about is visible out of doors. And so there are a lot of questions that need to be answered and the government has to bear its burden. It seems to me you've got, there are a lot of open questions about the area where Askins was. It seems to me that there's fewer about Ramirez. Can anybody get to that bridge who is not in the process of crossing the border? Absolutely. You do not have to be crossing the border whatsoever to be on that bridge. Now let me just be very clear. The bridge that was... No longer there. It's not there. So what I'm going to speak about is the replacement bridge. That bridge runs east to west. It connects a transit plaza, that cul-de-sac. It's a transit plaza, by the way. It would have been nice if there was a little more explanation. I would have really liked to include photographs, but I couldn't. So the transit plaza is basically a cul-de-sac. It's out of doors. It's not a building. And it's effectively a bus stop and a trolley stop. And those buses and trolleys are just going in the city? They only run north of the border into San Diego County. So this is a place you go if you want to take buses and trolleys outside. Nothing to do with the border. Well, it's a mix. So there are people who live and work in San Diego, I'm sorry, who maybe live in San Diego but work in Tijuana, or people who work in Tijuana but live in San Diego. So I'm sure there are people who take the transit to cross the border. You disembark from the border. You can also go start there and go someplace and there's nothing to do with the border. Absolutely. And the bridge in question, it's actually, there's a sign on the bridge that says, Pedestrian footpath to outlet mall. The outlet mall is to the east, and it is 100% inside the United States of America. You don't have to cross. Is the mall owned by the CPB? Is it owned by GSA? Not as far as I can tell. And is this true of the old bridge, the one that was taken down? That is my understanding, Your Honor, because when they were in a place, they were in a place on a bridge, and although they had come across the border, they were in a place where other people not crossing the border could have easily accessed. That's exactly right. And not only that people could have, but that people routinely do because this bridge, the function that it serves is a pedestrian overpass over I-5, where I-5 endpoints at the border. Is there any place in either of these two places where you can see that the port of entry is stopping and the city is starting? No, Your Honor. That's part of the problem. The ports, you can tell the footprint of the buildings in question. I understand. But you can't tell. I'm talking about the outdoor areas. No, not at all. However, there are signs that the government has put up on sidewalks, including on this elevated pathway, which they claim is enough to sort of remove this. They say? I'm sorry? What do the signs say? Well, the signs say this area is government property. It's right in front of the bridge, but not coming from the outlet mall, just on the transit side. There are some signs, but. . . That's correct. And what did they warn you to? They just indicate that this is a government property and that you are under surveillance and that photography can be limited. And that what? Photography can be limited. But none of this is in the amended complaint before us. I'm sorry, no. There is some indication that there are signs. Right. Yes, absolutely. And part of the problem is the configuration of this area continues to be under construction, and so we have tried to put forward the most current facts. But when I asked you whether you could tell that this was property they claimed, the answer is sort of yes. No. No, because there's no sign right there? Well, I suppose it depends on the specific place in question. So in Calexico, where Mr. Askins was standing, there's no sign, so I don't know how anyone would know that they're not just on a public sidewalk. With the elevated footpath that crosses I-5 and connects the transit plaza with the outlet mall on the U.S. side, in the cul-de-sac part where the transit plaza is, there's a sign. There's no sign, to my knowledge, on the other end of that footpath if you were to get on the bridge from the outlet mall. So how would you know? Somebody's at this transit plaza where people are just going all over the place and want to take a picture of their friend. Correct. There's a McDonald's. There's a Jack in the Box. Government, you can't take a selfie at that spot. That is correct, Your Honor. From that spot, you can see some activities of the Border Patrol? It's Customs and Border Protection. You can see only that there are agents. All of the actual inspection, all of the actual interaction is indoors. So you can see armed agents, but you can't see what they're doing. But Ramirez could see people. Yes. Now, on that bridge, you're overlooking, like I said, where I-5 ends at the U.S.-Mexico border, and you can see agents inspecting vehicles in primary, not secondary inspection. And you can also see agents patting down pedestrians. And so that's where he saw that the agents, the officers in question, male officers. So it's possible the government might have some concern about the privacy interest of people who are passing through the border, if somebody can stand on the bridge and take a photograph of them. I'm not sure what privacy interest the public has in information that's held out to the public. People are passing through a public space. Their identities are known. And, in fact, there are signs throughout the area that indicate that everyone's under surveillance. So I'm not sure what-I remain confused about that particular interest. If I may, I'd like to reserve the balance of my time. Thank you. Good morning. And may it please the Court, Thomas Pullen for the appellees. The plaintiffs here ask the Court to hold that the First Amendment guarantees an unfettered right to photograph sensitive government operations and highly restricted government facilities. Well, not unfettered, unlicensed. I mean, they didn't-I mean, the case can go in several directions once it goes on, but they're contesting the fact that you're-the government is saying they can't take photos at all unless they get permission with no standards for the permission. What they're asking for is an unfettered right to photograph, that they shouldn't need any kind of-that they just are allowed to walk onto- Does this depend on where we're standing? I mean, there may be a difference between where Mr. Ramirez was standing and where Mr. Askins was standing. But if we start with Askins, the government's got a tough-got a tough burden here to show that they've got an interest in a guy standing in the middle of a public street taking a picture of a building. So I think it's important to look at what is in the complaint as opposed to some of the representations that counsel has made here. Well, there's all kinds of stuff. I mean, this was dismissed by the district court without getting any- without anybody even being able to submit a map. So there is no allegation in the complaint that there was any confusion as to whether Mr. Askins was on the court of entry at the time. I mean, it's not really in some ways worth the energy because what she told us could be added to the complaint, right? In other words, she could amend the complaint. So if the problem is there's something not in the complaint- Well, the plaintiffs have amended it. I'm sorry, Your Honor. What? The plaintiffs have amended it once. All right. And they have still failed to make some of these allegations. What have they failed to state? Well, I don't think there's any allegation in the complaint that there was uncertainty that this property was part of the court of entry. Now, to be sure, they assert that it is a public forum, but I don't think there's anything there that says, you know, this was not part of- Essentially, we don't really know what public forum- we understand that you're claiming this property is public forum. That's what they said. And as I understand it, but they didn't say because they don't know exactly what that means. It doesn't mean the government owns the land or what does it mean. But they do say specifically that the government is claiming this is- we understand they're claiming this is public forum. And this is part of the court of entry. Part of the court of entry, yes. And they do specifically allege that in the San Ysidro areas that there are signs that, quote, appear to prohibit any form of photography from those outdoor areas. And so in my hypothetical, for example, if somebody is at this transit plaza and taking a tram from somewhere in San Diego to somewhere else in San Diego and wants to take a photograph of their friend, they can't do it. If they're on part of the port of entry, yes. And this transit plaza, as I understand it, is claimed to be in the port of entry, even though people are taking trams from one place in San Diego to another place in San Diego. I don't-I mean, it's a little unclear exactly what we're referring to in the complaint here. All that we know is that the plaintiffs have said in or near these areas there are signs. If we found out? I mean, this is-wouldn't it make more sense to let this case go to summary judgment and find out what we're talking about? Well, I think this case, for a couple of reasons- Because it could really matter. I mean, if my representation seems consistent with the complaint and if it's true, then you have a situation where the government is trying to stop people from photographing on property that whatever its official status is, is functioning as a part of the city of San Diego for people who have nothing to do with the border. The same thing was true in the Supreme Court's decision in Greer v. Spock. There we had public roads that traversed the military base. Yeah, but there you-this was a military base. You knew you were entering a military base. You knew you'd been granted access for limited purposes. Well, the public had unrestricted access to those areas of the base where they- Sure. And- This is like going to Fort Knox and going to the Patton Museum. Go through a fence, right? There were gates, but they weren't- Right, but there were no gates here, no gates. Do you have signs? Well, we know that there are signs in at least some areas because the plaintiffs have alleged that. They haven't made any allegations in the complaint. Shouldn't we figure out whether we've got a sign telling you when you've entered the port of entry and where the line of demarcation is? There are no signs where Mr. Askins was. Are there any signs that tell you that you can't take photographs there? There are no allegations in the complaint that there are not signs there. He says he was standing near the shoulder of a road, and I think it's important to look at kind of why he was there. He's at least alleged-Askins has at least alleged that this was a public forum. So even if it sort of implicitly concedes ownership by the government, it still suggests that it's just a public street, even if it's owned by the port of entry or GSA or whoever. They have made that kind of legal assertion that, yes, it is a public forum. Do we have enough facts to be able to decide that question here? Well, I don't think we have enough allegations that if proven- Well, if they've alleged that it's a public forum because it was a public street. But they haven't alleged- What else would they have to allege? I think that it's not part of this port of entry, which has a kind of clear purpose to facilitate the lawful transportation of goods. Well, in part, but it also is doing a whole bunch of other things, apparently. People are going from here to there, having nothing to do with the port of entry. But the fact that the government permits some portion of the port of entry to be used for other purposes- You haven't got a gate there, or you haven't got a green stripe that runs down and says, now entering the port of entry. Warning, some restrictions may apply. It would have told him if it stood 10 feet back on the grass that it would have been okay to take the pictures, but he couldn't do it where he was doing it. So we just don't know because the plaintiffs haven't alleged that? Why don't we figure this out rather than jumping to the conclusion that the case can't be decided? They've alleged that it was a public area. I think Ramirez is a little bit more complicated. But with Askins, they've at least alleged that it's a public forum. So what they came to do here was take photographs of- which is one of the most sensitive areas of the facility. And if he was standing two feet back on the park property, he could do that? Yes, but it's not clear that he could see exactly the same thing from there, that the angle would be exactly the same. We don't know that, do we? Why don't we figure this out? Well, I mean, he could have made that allegation in the complaint. All that the complaint says is that the exterior of a building was visible from the park, not that the specific part of the secondary inspection area was visible. And several courts, including the Supreme Court, have repeatedly rejected the argument that the First Amendment contains a right to go onto a government facility and take photographs of operations. But that's the whole thing. I mean, the problem here is the government has been arguing from cases that do seem inapposite. His presentation here is that he's not seeking access to any place that he doesn't have access to. He has access. Everybody has access to this spot. Well, some amount. Why are we relying on access cases? So I'd like to say two things. One is that there isn't just an unrestricted right of physical presence on this area. CBP can close the facility as required for the- But at the point he was doing it at hand. But at that point, there was access to anybody who wanted to be there when he was there. Yes, under several restrictions. Why is it an access question? Well, so this court said in Levy-Salazar, when confronted with a claim that someone had the right to view a horse roundup, that this isn't really a forum case because what is sought is information. It's not seeking a kind of dialogue that would implicate forum analysis. So to hear what the plaintiffs seek is just information about how these government operations work. No, they're not seeking the information. As I understand it, they're saying we can stand here and we can gather the information in our heads. No one's stopping us from doing that. What you're stopping us from doing is recording what we can see. So it's not a question of information. It's a question of essentially creating a communication for other people. And there's a myriad of cases saying that in the context of watching the police or watching government officials, if you could otherwise be there and watch them, you could take pictures of them. So two things, if I may. One, with respect to locations where people have a constitutionally guaranteed right of access, they do not have a constitutionally guaranteed right to take photographs, such as this very courtroom and others that we have, other facilities, town meetings, et cetera. But that's why the forum analysis could matter here, right? What is this place exactly? No, I think the point is that these, even when you have a right to be someplace, there is not necessarily a First Amendment, or not at all, a First Amendment right to take pictures. The case the other day, Jacobson. Could I make one more point about, I'm sorry. With respect to the filming police in public places that Your Honor referred to, those cases have all acknowledged that that right is subject to reasonable restrictions. The First Circuit specifically referred to restrictions. But the restriction here is you can do it if we let you and you can't if we don't. That's the restriction. Yes, the restriction is that it has to be. Is that a reasonable restriction by First Amendment, under the First Amendment case law? There's a great deal of discomfort with that kind of totally discretionary decision-making about First Amendment rights. I think when we're talking about a government facility where sensitive, some national security operations are happening, that it is entirely reasonable that the government would take action to prevent the dissemination of information about its most sensitive operations there. For example, they said you can't take a picture of the secondary facility, then we could have a discussion about that. But that's not the rule. No, the rule says that things will be prohibited where they interfere with the mission of the agency. And then several criteria are set out. They'll be prohibited unless we say you can do it. Well, there are several criteria that guide that. And the Supreme Court has indicated, and so has this court, through its policy regarding recording. Can you show me where the criteria are? Yes. In the media guidelines? So in the CBP media policy on 91, it says the CBP shall cooperate without favoritism while not compromising the mission. And then a couple sentences later, responses shall be tempered by concerns for ongoing investigation, sensitive foreign activities, operational factors, detection, targeting, and selectivity factors, techniques and capabilities, exchange of intelligence, and matters of litigation. Right. This is advice, internal advice to how to make the decision. But it's not a standard that somebody can come in, could a company come in and say you didn't comply with the standard because you weren't tempered by a concern for ongoing investigations? No, that's correct. But in this type of, when we're dealing with a kind of highly regulated government facility, selective access and a level of discretion are, I think, appropriate. How highly regulated can it be when people are allowed to walk all around, walk from the park and across the street? So there are several restrictions. There is no loitering. Bags are subject to search at any time. When we think of other places where those types of policies apply, airports, for example, courtrooms, other government buildings, those are not public fora that are dedicated to free expression. There are other restrictions on leafleting, on solicitation. So there are actually quite a number of laws and restrictions that apply. All right, so let's go to Jacobson. Yes, please. Which seemed to be a somewhat similar situation and where there was a protest that was at issue and the question was we need to know a lot more about this place before we know whether it's functioning essentially. Yes, so I think... Is it on public forum or public forum? I think Jacobson is distinguishable on several grounds. One is... Let me just say something in general. Yes, ma'am. You can distinguish anything. The question is are its principles applicable here? Well, I think the applicable principles are different for several reasons. One is the claim in Jacobson was not just seeking photography. There were issues of kind of physical access, and specifically the plaintiffs there were seeking to engage in a protest, which has elements of... Ordinarily more disruptive and you have to have more control over it. Well, so as this court... I mean, if they want to have a protest in the spot that we're talking about, would you say, oh, fine? No, they certainly could not have a protest. But the point I was trying to make was that this court in Levy-Salazar said that when we're dealing with types of expressive activity that are more like a dialogue, then we have a different type of analysis, the traditional forum analysis. In Levy-Salazar, it said this is more about gaining information about a government operation, so we look at the right of access cases, and the right of access doesn't involve a right to photograph. Other differences from Jacobson, we had different allegations, one about inconsistent application of the policy. As I understand, Levy-Salazar, was the rule that anybody could come here and look at this horse roundup? No, I think that was part of what... It was an access question because the government rule there was you can't come here. That's correct. But that's not the rule here. No, but even when there is... It's an access question. I think for the same reason that other cases, including those we've cited in our brief, where people... Is there any case in which somebody was someplace they were allowed to be, and the public in general was allowed to be, but there was a restriction on photography, and they called that an access problem? Yes, several courtroom cases. I believe Rice v. Kemper in the Eighth Circuit. There's the Third Circuit case. Wait, this is prohibiting photography in the courtroom? In execution chamber. But you don't have a right to be in the execution chamber. My goodness, that sure seems a far field from somebody standing right near a park on a public street. Well, I mean, there are several courtroom cases that involve different types of analysis that all get to the same place where you have a First Amendment right to be present, but no First Amendment right to photograph. A courtroom would be very different from a public street, and they have alleged that this is a public forum. Even if that concedes ownership, and I think ownership, at least for me, ownership is still very much in question, it doesn't tell us what the government wants to do. I mean, you know, Washington, D.C. is a federal enclave, but you get to walk up and down the streets and take photos of government buildings all the time. Yes, from places that are not going to be. So one reason why this is a little different that the plaintiffs have pointed to is that some of this happens in outdoor spaces. But by necessity, these government operations happen in outdoor spaces. It's fine, counsel. I mean, look, you've got Greer v. Spock running completely in your favor. If you had fenced this off and said, you know, you consent to these terms, this is now a restricted area. Drive through, come and park, go to McDonald's, go to Jack in the Box, shop within this area. But we want you to know it's a restricted and controlled area, and certain restrictions apply. We'd be talking about a very different case. So this court's case in decision in Hale involved a nuclear test site and the road that where access was sought there. They're not seeking access. That's why you keep coming back to that. They have access. They're there. They have some limited right of access. This is the test site in Nevada? Yes. There was no gate there. There was a cattle guard, and on one side of the cattle guard was the facility and on the other side was not. The court didn't point to any kind of signs or manned gate or anything else. And so I don't think that is necessary. In Greer, there was a gate, but it wasn't manned and there weren't signs of limiting activities. The Supreme Court looked at the purpose of the facility and whether the government had abandoned the right to regulate activities there, and the court said clearly it hadn't. So to here, CBP has not abandoned the right to restrict activities on the port of entry point. What were the people trying to do in that case? In which case, I'm sorry? Hale. In Hale? This is a peace protest, right? I believe, yes. And were they blocking the road? No. I don't think there was anything about the blocking. How far off of the main highway were they trying to go? So I apologize. I don't know all of those details, but my understanding is that there was a road connecting the kind of main highway that led up to the main part of the facility, and there was a special parking and demonstration area, and the agency there had said, Department of Energy, I suppose, had said that demonstrations were limited to this demonstration area, and the plaintiffs there did not want to be limited. Okay, but you actually had an area there that was designated for protests. They simply wanted to go someplace else. And approval was required. Right, but this is the Nevada Test Site. I mean, it's pretty obvious where everybody was at that point. You're talking about a road that divides Calexico from the public port of entry that's not marked at all. Well, I guess we don't know whether it was marked or not. Shouldn't we figure that out, counsel? You just told me that we don't know that. I agree with you. We don't know that. Shouldn't we figure that out? Well, so at a minimum, we know for the areas in San Ysidro because the plaintiffs included in their complaint that the government had posted several signs saying that photography was prohibited. So we don't need to know, at the very least. So you just think we should dismiss the complaint with respect to Ramirez, but it's okay if we go back on Askins? Well, we have asked the court to affirm the district court's judgment. However, if the court were going to remand to find out more information about signage, then I think it might make sense. I mean, find out more information means litigation proceeds as normal, i.e., you file an answer, then you file for a summary judgment motion, and you provide some of these answers. And then they, if they have other answers, they provide other answers. And then we know we're operating on it. We get a map of the area. We get photographs. We get Google view. We get anything that's available to us. We get to file the plats, something that tells us what's what. That is true. That would happen on a – Sure feels like if we had that information that both sides here would be able to make a much more refined argument. I think that's true, but – Or put it another way. There is some set of facts consistent with the complaint that would seem to say this is a public forum and you do have a problem, i.e., it's a public street, anybody can walk on it, and it appeared to be photography is generally protected by the First Amendment, and so on. Then you may have other facts, i.e., it really, for various reasons, it isn't really like a public street, and it isn't really a public forum, and so on. And that's what we can't judge right now. Well, I think the question is whether the – And that's essentially what Jacobson did. You never really finish with Jacobson, but the main message of Jacobson isn't it, that in order to decide – it isn't per se the case that around the border people have no First Amendment rights. I mean, that's one message, because if it was per se the case, they wouldn't have to know anything else. And number two, that beyond that, you have to know the details to decide what people's rights are and where. Now, that seems to me to be the two basic messages of Jacobson, whatever the details may be. Well, I think what Jacobson did not do is overrule this Court's precedent in which cases involving First Amendment claims and forum analysis have been decided on a motion to dismiss. In very different places. I mean, one of the beauties about property law is that all property is considered to be unique. So what applies at the Nevada test site may not work at San Ysidro. What works at San Ysidro may not be the same at Calexico. True, but one of the cases that we cited in our 28-J letter, this Santa Monica Nativity Scenes case, involved – An excellent opinion. It was a very fine opinion. And when I looked at that, it sounded as if the complaint included extensive exhibits from the government and that that formed a record upon which my colleague here, Judge Bybee, could rely on in the panel in deciding the case on a motion to dismiss. Yes, Your Honor, and here the complaint also included as attachments the policies that are challenged, which on their face indicate the government interests. And as in Santa Monica, the complaint alleges no facts that would, if proven, demonstrate that these interests are not served by – I guess the main fact was that he had a right to stand exactly where he was and see exactly what he saw. Well, not an unfettered right. I mean, there's a regulation that prohibits loitering on these areas. And again, the plaintiffs have not just – There's loitering statutes all over the place. They're not necessarily valid, but every city has one or had one. But I don't think there's any – there's no just – Again, I don't think the plaintiffs have alleged that they were not actually on the port of entry. They're just saying that part of the port of entry is a public forum. And even if the court were a little unsure about – Public street. I'm sorry? Because it functions as a public street. Yes. Okay, your time is way up. Thank you very much. It certainly is. Thank you. We'll give you, say, four minutes. Cut it in. Counsel, by alleging that this was a public forum, didn't the complaint implicitly concede that this was property owned by the government? No, your Honor. Forum status, again, it's not dependent on who owns the property. It was dependent on by some government. Oh, I'm sorry. I misunderstood. No, because what we do know, as I said before, is that the government is applying these policies to these areas. Whether these areas are properly conceded – But I didn't see anything in the complaint that actually called that in question. I didn't see anything in your brief. This is one of my frustrations – Oh, yes, your Honor. – both with the complaint and with the brief was I didn't see anything in either one of them in which you made the argument that you've made to us today, which I think was very effective, that we actually don't know who owns this property. I'm sorry, your Honor. It is in the complaint. It may not be as clear as you would like. But if you look at the excerpts of record at 74, it's important to note that what my client, Mr. Askins, did was he sought permission. And when he didn't get a response, and because he was on a deadline, he said he left a voicemail that said that he would take the photos that he was interested in from off property, basically. And I could make that clear. Off property might have been in the park. I mean, when he's talking with him on the phone and he says, oh, don't bother, I'll just take it from off property, the officer may have in mind that you can take it from the park. Again, he was just one step off of that park. Right. And we would be happy, again, we would be happy to amend to make it clearer. I think it could be clearer. I think the argument has become much clearer today. Thank you, your Honor. But I didn't think it was out of the complaint and the brief. I understand. It's morphed a little bit, which these things often do. Of course. The uncertainty that our client experienced, which, again, we could amend to make that much clearer, is really explained at paragraphs 47 through 50 of the amended complaint. That's in Excerpts of Record 74. To respond to counsel's point that we are seeking an unfettered right to photograph, that's actually explicitly contradicted by the complaint itself. If you look at paragraph 20 of the amended complaint, at Excerpt 69, we're very clear about the kind of photography that's at issue in this case. I think that at this stage, on a complaint, all that is required are these plausible allegations, both regarding the forum status of the particular places in question, but also regarding that there was a First Amendment violation. I think this Court has held time and time and time again, even in cases involving non-public forums where the standard is a lower scrutiny, that it is the government's burden to put forward evidence to justify restrictions on speech, and that is because, as this Court recognized in Comité de Jornaleros, the en banc opinion of 2011, that speech restrictions are supposed to be the last resort, not the first resort. I don't want to belabor any point. I think that the issue here is there may very well be a compelling or significant government interest. There may be information that would allow us and the Court to assess whether that interest is furthered by the restrictions here in question. None of that is before the Court. It can't be because the government bears the burden and all we have are our amended complaint. And so, given that there are no facts before the Court, given the holdings in Sammartano, in Caltrans, in Jacobson, it's all the more important that the government come forward with the information necessary to help us clarify what the boundaries of these places are. Even the signs, Your Honor, even though there are some signs in the San Ysidro cul-de-sac area, because it's a plaza that involves a lot of movement that doesn't necessarily have anything to do with the port crossing, it's not actually clear where those restrictions on photography apply. And as I said, although there may be a sign on one side of this elevated sidewalk, there isn't on the other. And how would someone know if they started walking on that end and came over on this end and that along the way they weren't supposed to take photographs? There are all kinds of questions like that that we submit are improperly decided at this juncture in a dismissal with prejudice of an amended complaint. And so we ask that... Okay, so your time is up. Yes, thank you so much. Thank you both very much. And the case of Askins v. U.S. Department of Homeland Security will be submitted, and we will take a brief recess. Thank you.
judges: Berzon, Bybee, Gleason